IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT M. HABLUTZEL, #Y46216, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-03375-JPG |
| | ) |
| RONNIE STEVENS, | ) |
| MATT McCONKEY, | ) |
| AMBER WALTERS, | ) |
| MONICA DURAN, | ) |
| and MELISSA NAVEL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter is before the Court on a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Amber Walters and Monica Duran (Doc. 52) and Joined by Defendants Ronnie Stevens, Matt McConkey, and Melissa Navel (Doc. 66). Plaintiff Scott Hablutzel opposes the motion based on the unavailability of the grievance process. (Doc. 67). For the reasons set forth below, the motion shall be **DENIED**.

### BACKGROUND

Plaintiff Scott Hablutzel filed this civil rights action under 42 U.S.C. § 1983 on October 13, 2023. He asserted claims for constitutional deprivations stemming from the denial of mental health treatment for severe emotional distress at Fayette County Jail in Vandalia, Illinois. The original Complaint did not survive screening under 28 U.S.C. § 1915A and was dismissed without prejudice. (Docs. 1, 10).

Plaintiff filed a First Amended Complaint (Doc. 11) on December 28, 2023. The Court screened it under § 1915A and allowed the following claim to proceed:

> **Count 1:** Eighth or Fourteenth Amendment claim against Sheriff Ronnie Stevens, Jail Administrator Matt M., Nurse Jane Doe 1, and MD Practitioner Jane Doe 2 for failing to provide Plaintiff with mental health treatment for severe

1

> emotional distress at Fayette County Jail from August 1, 2023 through September 28, 2023.

(*See* Docs. 11, 14). While Plaintiff identified the two unknown defendants and an additional defendant, Defendants Amber Walters and Monica Duran moved for summary judgment on the issue of exhaustion on November 14, 2024. (Docs. 25, 52).

On November 15, 2024, the Court allowed Plaintiff to file a Second Amended Complaint (Doc. 55) that survived § 1915A review on the following claim:

> **Count 1:** Eighth Amendment[1] claim against Sheriff Ronnie Stevens, Jail Administrator Matt McConkey, Nurse Amber Walters, MD Monica Duran, and Officer Melissa Navel for failing to provide Plaintiff with mental health treatment for severe emotional distress at Fayette County Jail from August 1, 2023 through September 28, 2023.

(Docs. 53, 55). All defendants answered the Second Amended Complaint. (Docs. 59, 60).

Defendants Walters and Duran were given an opportunity to withdraw their original motion for summary judgment and re-file it with reference to the Second Amended Complaint, but they declined to do so. (Doc. 53). Defendants Stevens, McConkey, and Navel joined in the summary judgment motion and supplemented it on November 22, 2024. (Docs. 52, 64-66). The Court then ordered Defendants to supplement the original motion with citations to evidentiary materials in the record consistent with Federal Rule of Civil Procedure 56 and Local Rule 56.1. (Doc. 68). Defendants Walters and Duran filed a supplement on March 19, 2025.[2] (Doc. 71).

## MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment based on Plaintiff's failure to exhaust. (Docs. 52, 66, and 71). According to their motion, supplements, and declarations, the Jail had a procedure for addressing complaints internally before filing a lawsuit. Plaintiff had access to this

---

[1] Plaintiff clarified that he was a convicted prisoner when his claims arose and was therefore subject to the Eighth Amendment, not the Fourteenth Amendment. (*See* Docs. 51, 55).
[2] In addition to including citations to the record, Defendants presented new facts and arguments in the Supplement (Doc. 68). They did so after declining the Court's earlier invitation to file a new motion for summary judgment and without requesting leave of the Court to file a late reply.

grievance procedure at the Jail. However, the Jail has no record of any inmate grievance forms he filed about mental health treatment in August or September 2023. Defendants seek summary judgment based on Plaintiff's failure to comply with the exhaustion requirement in the Prison Litigation Reform Act.

### RESPONSE

Plaintiff filed a response in opposition to the motion for summary judgment. (Doc. 67). According to his declaration, sworn statement, and motion, the Jail's grievance process was unavailable to him. Plaintiff did not receive a written copy of the grievance procedure or a verbal explanation of it from staff but acknowledges that it was available on the kiosk. He attempted to resolve his complaint informally by speaking with Jail Administrator McConkey. Defendant McConkey agreed to relay his complaint to Sheriff Stevens. When he heard nothing more, Plaintiff requested an inmate grievance form repeatedly after each incident. Jail staff would not provide the form or an alternative means of submitting a grievance, so Plaintiff filed a complaint with the Illinois Department of Corrections (IDOC) Jail & Detention Standards Unit. Before his concerns were addressed, Plaintiff transferred into IDOC custody. *Id*.

### FINDINGS OF FACT

The following material facts are undisputed for purposes of the pending motion: Plaintiff was an inmate at Fayette County Jail during all relevant times, *i.e.*, August 1, 2023 through September 28, 2023. (Docs. 52, 67, 71). His claim arose from incidents that occurred at the Jail on August 1, 2023 (request slip to mental health); August 9, 2023 (request slip to mental health); August 15, 2023 (meeting with Nurse Walters); August 22, 2023 (request slip to mental health); and August 28, 2023 (refusal of medications prescribed by Dr. Duran). *Id*.

At the time, Fayette County Jail had a grievance procedure. (Doc. 52-1, pp. 10-11). The Fayette County Jail Inmate Handbook ("Handbook") described this procedure. Plaintiff included a hard copy of the Handbook with the Second Amended Complaint. (Doc. 55, pp. 41-47). An

3

electronic copy was also available to inmates on the Jail's kiosk. (Doc. 67, p. 5; Doc. 71, ¶ 5).

According to the grievance process, Plaintiff was required to attempt informal resolution of his complaint before submitting a written inmate grievance form at each of four levels: (1) Correctional Officer (Level 1); (2) Jail Administrator (Level 2); (3) Chief Deputy (Level 3); and (4) Sheriff (Level 4). If the issue was not resolved at the Jail, Plaintiff could file a complaint with the IDOC's Jail & Detention Standards Unit. *Id*.

The Jail has no documented inmate grievance forms or responses from Plaintiff. (Doc. 52; Doc. 66, pp. 4-7; Doc. 71). Plaintiff did speak with Jail Administrator McConkey and ask to meet with a mental health provider in early August 2023. (Doc. 66, pp. 4-5, ¶ 10). McConkey considered this an informal attempt to resolve Plaintiff's complaint, in satisfaction of Levels 1 and 2 of the Jail's grievance process. *Id*. at ¶ 11. However, Plaintiff was still required to file a written inmate grievance form with Chief Deputy Coody (Level 3), Sheriff Stevens (Level 4), and the IDOC's Jail & Detention Standards Unit. *Id*. at ¶¶ 12, 15. The Jail Administrator, Chief Deputy, and Sheriff received no written grievance. *Id*. at ¶¶ 5-6, 14-16.

In his Declaration (Doc. 67), Plaintiff described the steps he took to obtain an inmate grievance form and exhaust his administrative remedies at the Jail after the incidents on August 1, 9, 15, 22, and 28.³ Following his conversation with Jail Administrator McConkey in early August, Plaintiff waited more than 48 hours to hear from Sheriff Stevens. *Id*. at ¶ 5. By this time, it was too late to file a grievance in compliance with the Jail's grievance procedure, and the Jail offered no alternative process for inmates who received no response to their informal complaints. *Id*.

After submitting a written request for mental health treatment on August 9, 2023, Plaintiff met with Nurse Walters on August 15, 2023. (Doc. 67, ¶ 6). When the nurse told him that he would have to wait for an appointment with a mental health professional, Plaintiff requested an

---

³ Defendants do not dispute Plaintiff's account. They also do not assert or suggest that the mandatory inmate grievance form was readily available to inmates at the Jail. *See* Docs. 52, 66, and 71.

inmate grievance form from Officer Navel. *Id*. The officer explained that she had "things to do" and would bring a form to his cell later. *Id*. at ¶¶ 6-7. She never brought an inmate grievance form. *Id*. Later the same day, Plaintiff asked Officer Kevin Heiman for an inmate grievance form, and the officer said that he did not think any forms were available. *Id*. at ¶¶ 8-9. He agreed to look and bring a form to Plaintiff, if he found one. He never returned with a form. *Id*. Plaintiff asked Officer Terry Heiman for a form on August 16, 2023, and he received no form. *Id*. at ¶ 10.

Plaintiff sent a request for mental health treatment on August 22, 2023, and he received no response. (Doc. 67, ¶¶ 11-12). On August 23, 2023, Plaintiff asked Officer Navel for mental health treatment, and the officer told him to submit a written request to see the nurse who worked Wednesdays (that day) and Fridays. Officer Schaeffer said the same thing later that day. *Id*.

On August 28, 2023, Plaintiff was escorted to a private room across from Officer Navel to meet with Dr. Duran. (Doc. 67, ¶ 13). After Plaintiff explained why he needed to see a mental health provider, the doctor ended the meeting. *Id*. Plaintiff asked Officers Navel and Brock Kenny for an inmate grievance form. *Id*. at ¶ 14. The officers said they had "things to do" and would bring a form to his cell later. They never did. *Id*. The same day, Plaintiff asked Officer Kevin Heiman for a grievance form. He said he "would look [for a form] and return after count." *Id*. at ¶ 15. When the officer returned, he said no grievance forms were available. *Id*. Plaintiff requested a form from Officer Gage Marston on August 29, 2023. *Id*. at ¶ 16. The officer agreed to bring a form, but he never did. *Id*. Plaintiff then sent a complaint to the IDOC's Jail & Detention Standards Unit on or around September 4, 2023.[4] (Doc. 67, ¶ 17; Docs. 66, 71).

### CONCLUSIONS OF LAW

**A.     Legal Standards**

Summary judgment is proper when there is no genuine issue of material fact and the

---

[4] Defendants omitted reference to this written complaint in their initial motion. (Doc. 52, 52-1). In the Supplement, Defendants Duran and Walter acknowledged it. (Doc. 71).

movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the pleadings, depositions, interrogatories, admissions, and affidavits show no genuine issue of material fact, the moving party is entitled to summary judgment. FED. R. CIV. P. 56(c). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmovant. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Generally, the court cannot resolve factual disputes on a motion for summary judgment; factual disputes must be decided by a jury. *See, e.g., Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] trial is the standard means of resolving factual disputes. . . ."). When the motion pertains to a prisoner's failure to exhaust, however, courts generally conduct an evidentiary hearing to resolve contested issues of fact regarding a prisoner's purported failure to exhaust. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), *abrogated by Perttu v. Richards*, 605 U.S. 460, 468 (2025) (holding that parties have a right to a jury trial to resolve genuine issue of act on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment). Where there are no material factual disputes, no evidentiary hearing is necessary. *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009). No hearing is required here.

The Prison Litigation Reform Act (PLRA) requires a prisoner to bring a lawsuit about the conditions of his confinement only after he exhausts all available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). To exhaust, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id*. at 1024. Exhaustion must occur before the prisoner files suit. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

The Fayette County Jail Inmate Handbook sets forth the steps an inmate must follow in the

grievance process. (Doc. 52-1, pp. 10-11). Within 48 hours of an incident necessitating use of the process, an inmate must first attempt informal resolution of a complaint with a staff member. *Id*. If the issue is not resolved, the inmate must ask a correctional officer for an inmate grievance form. *Id*. Use of this form is mandatory. *Id*. ("You must file an Inmate Grievance Form. . . . To file a grievance, you must ask a Correctional Officer for a Grievance Form. The Correctional Officer will accept the Grievance Form provided it is filled out properly and signed by you."). The form must be completed within 48 hours of the incident and submitted to a Correctional Officer (Level 1). If the inmate is not satisfied with resolution of the grievance by the Correctional Officer, he can submit an appeal to the Jail Administrator (Level 2), then Chief Deputy (Level 3), and finally the Sheriff (Level 4). If he is still not satisfied, Plaintiff can submit his grievance to the IDOC's Jail & Detention Standards Unit. *Id*.

**B.   Analysis**

To comply with the Prison Litigation Reform Act's exhaustion requirement, a prisoner must exhaust "available" remedies. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit Court of Appeals has long held that prison officials cannot exploit the PLRA's exhaustion requirement by preventing an inmate from accessing an administrative remedy. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2002). A facility's failure or refusal to give an inmate access to grievance forms, or respond to them, can render the grievance process unavailable. *See Daniels v. Baldwin*, App. No. 21-1686, 2022 WL 1768857, at *2 (7th Cir. 2022); *Dale v. Lappin*, 376 F.3d at 656 (defendants did not meet their burden of proving that plaintiff failed to utilize available administrative remedies where he requested and was denied grievance forms). *See also Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (district court erred in failing to consider prisoner's claim that he was denied access to grievance forms and unable to access an available administrative remedy).

Fayette County Jail's grievance procedure required inmates to use the Jail's inmate

grievance forms to file a grievance. *See* Doc. 52-1, pp. 10-11. The grievance procedure stated: "You **must** file an Inmate Grievance Form. . . . To file a grievance, you **must** ask a Correctional Officer for a Grievance Form. The Correctional Officer will accept the Grievance Form provided it is filled out properly and signed by you." *Id*. (emphasis added). The plain language of the policy made use of the Jail's inmate grievance form mandatory. It also authorized a correctional officer to reject a grievance that did not contain the proper information. Without seeing the form, an inmate would presumably have no idea what information is required to properly complete a grievance. The Jail's grievance procedure offered no alternative means of filing a grievance when the standard form was unavailable.

Against this backdrop, Plaintiff asserts that he was unable to obtain the mandatory inmate grievance form at the Jail. His declaration sets forth a detailed account of his attempts to obtain this form from numerous officers after each incident on August 1, 9, 15, 22, and 28. He was consistently denied access to the form. Frequently, staff indicated that the inmate grievance form was unavailable. Staff offered no other alternatives for filing a grievance. The Jail's grievance procedure also offered no alternative remedy for an inmate who lacked access to an inmate grievance form, received a late response to a verbal complaint, or received no response at all.

In their Supplement, Defendants argue that Plaintiff could have filed a grievance without using the form. They fail to acknowledge the plain language of the grievance procedure. They also offer no evidence to support this assertion. This argument creates no genuine factual dispute.

Based on the record before the Court, summary judgment must be denied. Defendants have not met their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies in their motion or supplements. At the same time, Plaintiff has presented undisputed facts showing that the Jail's grievance process was unavailable to him.

## DISPOSITION

The Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed

by Defendants Amber Walters and Monica Duran (Docs. 52 and 71) and joined by Defendants Ronnie Stevens, Matt McConkey, and Melissa Navel (Docs. 64-66) is **DENIED**. The Court will separately enter a Merits Scheduling and Discovery Order with further instructions and deadlines for litigation.

    **IT IS SO ORDERED.**

    **DATED: 9/24/2025**

s/J. Phil Gilbert  
**J. PHIL GILBERT**  
**United States District Judge**
